21686. HIGHTOWER v. CHATTAHOOCHEE INDUSTRIAL RAILROAD.

ARGUED JUNE 11, 1962—DECIDED JULY 9, 1962.

*Phillip Sheffield,* for plaintiff in error.

*W. L. Stone, Stone & Stone, Hansell, Post, Gardner, Brandon & Dorsey, R. W. Crenshaw,* contra.

GRICE, Justice. A property owner assigned error upon the trial judge's denial of an interlocutory injunction against condemnation of a portion of his land by a railroad.

Hilton E. Hightower sought injunctive relief against Chattahoochee Industrial Railroad, which had recently been granted its charter by the Secretary of State and was seeking a right of way for the original lay out and construction of its lines. Upon the interlocutory hearing, evidence was submitted on behalf of each of these parties.

In their oral arguments and briefs submitted here, counsel have narrowed and defined the issues so that we may state them as follows: 1. Was prior approval by the Public Service Commission necessary for this condemnation? 2. Was the condemnation a taking for a private, rather than a public, purpose? As to the first issue, admittedly no such approval was obtained, the parties differing as to its necessity. As to the second, they disagree as to the legal effect of the testimony adduced. We now consider those two issues in determining the correctness of the denial of the interlocutory injunction.

1. The plaintiff property owner's position is that the absence of such prior approval of the condemnation demanded the grant of the interlocutory injunction, and that for this reason alone its denial was error. We cannot agree with this contention.

Authority for this original condemnation is provided by *Code* § 94-301 (3), (4), which empowers such a railroad "to condemn" and ". . . to lay out its road. . ."

The approval of the Public Service Commission is said to be necessary because of *Code Ann.* § 94-321, which contains the following language: ". . . Provided, further, that the right of condemnation under this section shall not be exercised until the Public Service Commission, under such rules of procedure as

it may provide, shall first approve the taking of the property or right-of-way designated for the public use or uses desired." But this Code provision does not apply here. It is applicable to railroads which have previously laid out and constructed their rights of way and wish to improve their lines or relocate their tracks. This is manifest from the caption of the original act (Ga. L. 1914, p. 144) supplying the significant portion of this section. That caption states: "An Act to authorize and empower railroad companies owning or operating, or which may hereafter own or operate a railroad or any part thereof in the State of Georgia *to better and improve their lines* of railroad by the relocation of their track or tracks, the construction of additional tracks and terminal facilities, the elimination of curves and grades, the filling of trestles or the widening of cuts, the establishment of new and better depots, tracks and terminal facilities, and the construction of tracks connecting two or more lines of railroad operated by the same company, and to acquire by purchase or condemnation such real estate as may be necessary and proper for such purposes, subject to the approval of the railroad commission." (Emphasis ours.)

Therefore, prior approval by the Public Service Commission of this condemnation was not necessary.

2. Considering now the second issue, whether this condemnation was for a private or a public purpose, we must keep in mind the prospective as well as the presently planned use of this railroad's facilities.

The plaintiff's evidence stressed that at the present time the section through which defendant railroad proposes to operate its farm and timber lands with no businesses, industries, or warehouses located there except a pulpwood plant which is under construction and which will be the carrier's only shipper under the "immediate plans" of the railroad. On the other hand, the defendant railroad's testimony showed that it was planned as a common carrier, to be used by the public generally and that efforts were being made to attract new industries to the area to be served.

The evidence, as we evaluate it, authorized the finding that the condemnation was for a public use. The test is not "the

number of people that it accommodates, or who use it, but rests upon the fact that everybody who has occasion to use it may lawfully and of right do so . . . the mere fact that it is actually used by one or two individuals does not negative the public character of the use." *Harrold Brothers v. Mayor &c. of Americus,* 142 Ga. 686 (1), 688 (83 SE 534). There, a spur track was involved. Here, it was the main line, an even stronger situation. In this same connection, *Railroad Commission of Georgia v. Louisville &c. R. Co.,* 148 Ga. 442, 445 (96 SE 855), approved the *Harrold* case, supra, and held that "The fact that the track may be for the present benefit of only one industry, while important in determining the character of the use, does not necessarily negative the public character of the use." See also, *Bradley v. Lithonia Arabia Mountain R. Co.,* 147 Ga. 22 (2) (92 SE 539); *Tift v. Atlantic C. L. R. Co.,* 161 Ga. 432 (2) (131 SE 46).

Under the evidence before him, the trial judge did not abuse his discretion in denying the interlocutory injunction.

*Judgment affirmed. All the Justices concur.*