48161. NORTON REALTY & LOAN COMPANY, INC. et al. v. BOARD OF EDUCATION OF HALL COUNTY.

CLARK, Judge. Exercising the right of eminent domain granted county boards of education under Code Ann. § 32-951, the Board of Education of Hall County instituted an *in rem* proceeding for condemnation of certain lands of appellants to acquire a right-of-way and permanent easement for construction and maintenance of a sewer line. This was for extension of an existing City of Gainesville sewer line and was described as being for the purpose of providing sewage facilities to River Bend Elementry School. After the Special Master (Code Ann. Ch. 36-6A) determined the

value of the land taken to be $5,600 but subtracting $3,300 as representing consequential benefits and without any consequential damages, the award was entered at $2,300. Upon trial of the appeal, the jury returned a verdict for $925.

Condemnees then made a motion for a judgment notwithstanding the verdict and in the alternative for a new trial. In passing on this motion the court noted that the evidence introduced did not conform with the description of the easement contained in the petition. Accordingly, the order stated that there would be a new trial "unless condemnor agreed that the judgment passed on the verdict entered by the jury dated July 12, 1972, be amended to conform with the evidence adduced at the trial." (R. 65-67). This order further recited the condemnor had assented to such conformance and therefore the trial court amended its previous judgment rendered after the verdict by making a specific reference to "The plat introduced as Condemnor exhibit 2 at the trial" and made the description contained in that plat to be a part of the final judgment.

This appeal followed. As stated in appellants' brief there are four questions for determination. These are: 1. Does the condemnor have authority to condemn a sewer easement which will serve others in addition to the River Bend School? 2. Does the condemnor's authority to condemn extend outside its territorial limits? 3. Does the trial court have the power to amend its original judgment to make the description conform to the evidence? 4. Does the amended judgment sufficiently describe the property taken?

1. The first question requires us to decide if the eminent domain power possessed by the Hall County Board of Public Education to condemn for school purposes extends to the instant situation where the sewage line extension will also be available to owners of lands lying between the existing facilities owned by the City of Gainesville and the River Bend School.

"The exercise of the right of eminent domain shall never be abridged, nor so construed as to prevent the General Assembly from taking property and franchises, and subjecting them to public use." Code Ann. § 2-2501 (Art. IV, Sec. II, Par. I of the Constitution of Georgia).

"A condemnation proceeding is statutory and in derogation of the common law, and one who institutes such a proceeding has no authority to vary or add to the provisions of the statute. He has no right save those expressly granted by the statute." *State*

*Highway Dept. v. Pierce,* 46 Ga. App. 52 (1) (166 SE 453). Under Code Ann. § 32-951: "The county boards of education, . . . are hereby authorized and impowered to take and damage, by condemnation, private property for public school purposes, either for public school building sites, playgrounds, athletic fields, or other purposes, in connection with the common schools, high schools or any public educational program which is now or may be hereafter authorized by law."

Our Supreme Court passed upon the discretion that exists in a condemning authority in *Kellett v. Fulton County,* 215 Ga. 551 (111 SE2d 364). There at page 555 the court says: "In *King v. City of McCaysville,* 198 Ga. 829 (2) (33 SE2d 99), this court held: 'In the absence of bad faith, the exercise of the right of eminent domain rests largely in the discretion of the authority exercising such right, as to the necessity, and what and how much land shall be taken.' 'A large discretion is vested in a party having the right to condemn, in the selection of the particular property to be condemned; and such selection should not be interfered with or controlled by the courts, unless made in bad faith, or capriciously or wantonly injurious, or in some respect beyond the privilege conferred by statute or its charter.' *Piedmont Cotton Mills v. Ga. R. &c. Co.,* 131 Ga. 129, 134 (62 SE 52). In the *Piedmont* case, on p. 136, the court stated: 'The word "necessary" is not meant to be used in the sense of "indispensable." Necessity for public use is not such an imperative necessity that would render the construction and operation of a railroad impossible without the amount of land in question.'" In an earlier case that court said: "The law is well settled that, when the State gives to a person or corporation the right of eminent domain, it carries with the grant of this power the right to condemn such property as may be reasonably necessary for the purpose for which the property is to be condemned, . . " *Barrett v. State Hwy Dept.,* 211 Ga. 876, 877 (89 SE2d 652).

The evidence clearly showed that expansion of the facilities at the River Bend School created a necessity for new sewage facilities. The fact that there was a convalescent home and other buildings along the extension line which would be permitted to make use of the extension does not affect the fact that the sewer easement furthered school purposes for the school at the end of the line.

The test is not "the number of people that it accommodates, or who use it, but rests upon the fact that everybody who has occasion to use it may lawfully and of right do so. . . [T]he mere fact that

it is actually used by one or two individuals does not negative the public character of the use." *Harrold Bros. v. Mayor &c. of Americus,* 142 Ga. 686, 688 (83 SE 534). This principle has been followed in *Bradley v. Lithonia &c. R. Co.,* 147 Ga. 22 (2) (92 SE 539); *Rogers v. Toccoa Electric Power Co.,* 163 Ga. 919 (4b) (137 SE 272); *Housing Authority &c. v. Johnson,* 209 Ga. 560, 562 (74 SE2d 891); *Hightower v. Chattahoochee Industrial R.,* 218 Ga. 122, 124 (126 SE2d 664); *Austin Enterprises v. DeKalb County,* 222 Ga. 232, 233 (1) (149 SE2d 461); *Dept. of Transportation v. Livaditis,* 129 Ga. App. 358.

In alignment with this test, we hold that since the evidence shows a necessary school purpose in constructing the sewer line, it is immaterial that other individuals may be served. It is only "if, under pretext of such necessity, the property of one is taken for the private use of another, the courts should declare the law inoperative." Code § 36-102. See *Housing Authority &c. v. Johnson,* 209 Ga. 560, 562 (74 SE2d 891). The condemnation of land for a sewer easement for school purposes was therefore justified.

2. Does the Hall County Board of Education have authority to condemn land outside its boundaries in order to connect its sewer line extension with the City of Gainesville sewer facility? The cases on this question were discussed thusly in *Howard v. City of Atlanta,* 190 Ga. 730, 732 (10 SE2d 190: "[W]hether or not a municipality can in fact exercise a given power beyond its territorial limits, in the absence of express language to such effect, depends at last upon the nature of the subject-matter to which the power relates, and whether a full and complete exercise of the power reasonably requires action beyond the territorial limits of the municipality. The general doctrine that a municipal corporation can only exercise its powers within its corporate limits is founded on the fact that generally no authority is given by charter to act beyond such limits; and hence the corporate authorities are restricted in that regard by the general rule that they can exercise only such powers as are granted by express words. The general rule is, however, subject to the qualification that a municipal corporation may also do those things which are fairly or necessarily implied in or incident to the powers expressly granted.' Dillon on Mun. Corp., 1627, note. Thus in *Langley v. Augusta,* 118 Ga. 590 (45 SE 486, 98 ASR 133), it was said that an express grant of authority to a city to construct sewers and drains should be held to include the power

to construct them beyond the corporate limits, where it is found by the authorities to be reasonably necessary in order to establish a complete and useful system of sewerage. The court took cognizance that it would be impracticable and most undesirable to require a municipality to confine such works within its limits. *Loyd v. Columbus,* 90 Ga. 20 [15 SE 818], which constituted a ruling to the contrary, was criticized and doubted by the court. In *Hall v. Calhoun,* 140 Ga. 611 [79 SE 533], the court held that the City of Calhoun had authority under the terms of its charter to establish and construct a system of waterworks, and that under this grant it could, where necessary, obtain by contract a source of water beyond its limits. The court said that *Loyd v. Columbus,* supra, 'will not be extended.' "

One of the cases therein considered dealt specifically with drainage and sewerage construction beyond the city boundaries. That was *Langley v. City Council of Augusta,* 118 Ga. 590 (45 SE 486, 98 ASR 133), where the Supreme Court stated in headnote 2 that, "Upon reason and authority the acquisition of land for the purpose of perfecting a system of drainage or sewerage and the construction of drains and sewers as a part of such system should be an exception to the general rule." And in the opinion at page 594 that, "It should not be presumed, unless the language of the municipal charter or of some legislative Act requires it, that the General Assembly intended to restrict a municipal corporation to the use of land within its limits for the purpose of constructing drains and sewers. These corporations ought to be encouraged, if not absolutely required to carry their sewage and surface-water charged with decaying matter beyond their limits to a point where the lives and health of the inhabitants of the city and adjacent territory would not be injuriously affected by them. To say that a municipal corporation could not acquire land for this purpose beyond its limits, and that therefore it must discharge its sewage and drainage inside the city, would be equivalent to saying in many cases that it is the duty of a municipal corporation to discharge matter reeking with fetid odors and noxious gases in the very midst of its citizens. Such a suggestion is intolerable."

Illustrative of this concept authorizing condemnation for sewage purposes beyond the territorial limits is the statutory directive in our Revenue Bond Law, codified as Chapter 87-8. In that chapter a county school district is included in the definition of "municipality" (Code Ann. § 87-802 (b)) and provides the

condemnor may undertake to create a system of sewerage with "all appurtenances thereto, including lands, easements. . . ." Code Ann. § 87-802 (a 3). Additionally, under Code Ann. § 87-803 (a), the municipality which by codal definition includes the Hall County Board of Education shall have the power "To acquire by gift, purchase, or the exercise of the right of eminent domain, to construct, to reconstruct, to improve, to better, and to extend any undertaking wholly within or wholly without the municipality, or partially within and partially without the municipality; and to acquire by gift, purchase, or the exercise of the right of eminent domain, lands, easements, rights in lands, and water rights in connection therewith."

Therefore, it is clear that where the power of eminent domain is being utilized for the purpose of creating or improving a sewage system and the land taken is reasonably necessary to accomplish this end, the condemning authority may take land outside its territorial limits. The evidence here authorized a finding that River Bend School would have to close unless a satisfactory sewage system was created. To resolve this, the Hall County Board of Education had to construct a sewer line from the school to the nearest and most favorable point of entry into the City of Gainesville sewer system. Since the existing system operated by the City of Gainesville did not extend beyond the city limits, the County Board of Education condemned as easement through condemnee's land which lay partially within and partially without the city limits in order to reach and connect with the existing city sewer line. Under this state of facts the Hall County Board of Education has the power to condemn a sewer easement outside its territorial boundaries. See also *Mays v. State of Ga.,* 110 Ga. App. 881, 886 (140 SE2d 223).

3. Did the trial judge have the power to amend the judgment to incorporate the plat and thereby conform the description of the condemned lands to the evidence? "A judgment may be amended by order of the court to conform to the verdict upon which it is predicated, even after an execution issues." Code § 110-311. The cases clearly uphold the trial court's power to amend a judgment to make it conform with the evidence. We quote from some of these."The judgment in this case is affirmed, for the reasons that the judgment was incorrectly entered up,. . .; and the Court had the power, and it was his duty, to amend the judgment and execution, so as to make them conform to the legal effect of the verdict." *Mahone v. Perkinson,* 35 Ga. 207, 208. "The judgment

rendered in this case did not conform to the verdict, but enlarged thereon; and therefore it was not error to amend the same, as was done by the trial court." *Segers v. Williams,* 147 Ga. 146 (2) (93 SE 81). "In the present case the amendment had the effect merely of carrying out the intendment of the original verdict . . ." *Robinson v. Vickers,* 160 Ga. 362 (2) (127 SE 849). See also *Lenoard v. Collier,* 53 Ga. 387 (1); *Jones v. Whitehead,* 167 Ga. 848 (2) (146 SE 768); *Brown v. Cole,* 196 Ga. 843 (28 SE2d 76); *Foster v. Allen,* 201 Ga. 348, 349 (2) (40 SE2d 57).

The trial judge's order moulding the judgment to the evidence properly made the judgment specify the same plat that the jury utilized in determining the verdict. This was correct and in conformity with the evidence.

4. Our final question is to determine if the amended judgment sufficiently describes the property condemned. "A judgment must conform to the verdict (Code § 110-301); and likewise it must follow the true meaning and intent of the finding of the jury. [Cit]. . . In determining whether a judgment conforms to the verdict, the judgment must be construed with reference to the pleadings and the evidence. [Cits.]" *Taylor v. Taylor,* 212 Ga. 637 (1) (94 SE2d 744). Additionally, " 'A judgment may not be arrested or set aside for any defect in the pleadings or record that is aided by verdict or amendable as matter of form.' Code § 110-705. When the irregularities in the record can be corrected by amendment, the judgment will not be arrested or set aside. [Cits.] Defects in matters of form can be amended. [Cit.] An irregularity in the judgment as to its amount may be corrected by amendment. [Cits.]" *Homasote Co. v. Stanley,* 104 Ga. App. 636, 641 (122 SE2d 523). "[I]f the decree could have been amended, it was in legal effect amended." *Burch v. Dodge County,* 193 Ga. 890 (2) (20 SE2d 428). "The informal way in which property is described in a petition is a defect which would be amendable before, and which would be cured by, a judgment in the case." *Mercer v. Nowell,* 179 Ga. 37 (1) (175 SE 12).

Although this easement is by condemnation and not conveyed by deed, the description of the property necessary in a deed would be applicable sub judice. " 'The description of the property conveyed in a deed is sufficiently certain when it shows the intention of the grantor, as to what property is conveyed, and makes its identification practicable.' *Andrews v. Murphy,* 12 Ga. 431. When this appears, the exact location and boundaries of the land may be shown by extrinsic evidence. *Crawford v. Verner,*

122 Ga. 814 (50 SE 958)." *Hollywood Cemetery Corp. v. Hudson,* 133 Ga. 271, 274 (65 SE 777).

In the instant case, the judgment incorporated a specific plat which had served as the basis for the jury's verdict. The plat identified the portion taken for the easement sufficiently by indicating the metes and bounds. See *Pye v. State Hwy. Dept.,* 226 Ga. 389, 414 (175 SE2d 510). Actually the only statistic not included in the judgment is the width of the sewer easement which is agreed as 30 feet in other places in the pleadings and evidence. We, therefore, hold that the description of the condemnation is clear and sufficient.

5. As the verdict was within the range of evidence and was authorized by the evidence, there is no abuse of discretion in the trial judge's denial of a motion for a new trial on general grounds. "The verdicts had the approval of the trial court and cannot be disturbed by this court on appeal." *State Hwy. Dept. v. Thompson,* 105 Ga. App. 738, 739 (125 SE2d 537).

*Judgment affirmed. Hall, P. J., and Evans J., concur.*

ARGUED MAY 7, 1973 — DECIDED SEPTEMBER 18, 1973.

*Hammond Johnson, Jr.,* for appellants.

*Robinson, Buice, Harben & Strickland, Sam. S. Harben, Jr.,* for appellee.